[No. D036107. Fourth Dist., Div. One. Mar. 29, 2001.]

LARRY BARKER, Plaintiff and Appellant, v.
BROWN & WILLIAMSON TOBACCO CORPORATION, Defendant and
Respondent.

**COUNSEL**

Larry Barker, in pro. per., for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Ralph A. Campillo and Hall R. Marston for Defendant and Respondent.

**OPINION**

**KREMER, P. J.**—Larry Barker appeals the dismissal of his wrongful death suit against Brown & Williamson Tobacco Corporation (Brown) for the

1962 death of his father following the sustaining of a demurrer on the ground Barker's claim was barred by the statute of limitations. On appeal, Barker contends the Legislature's 1997 amendments to Civil Code[1] section 1714.45 abrogated the statute of limitations for tobacco-related wrongful death suits or, alternatively, revived his lawsuit.[2] Barker also contends Brown's concealment of facts extended the limitations period. We affirm.

DISCUSSION

I

*The Amendments to Section 1714.45 Did Not Abrogate or Extend the Limitations Period*

Prior to the 1997 amendments, section 1714.45 provided that a manufacturer or seller was not liable in a products liability action if: (1) "[t]he product is inherently unsafe and the product is known to be unsafe by the ordinary consumer"; and (2) "[t]he product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, *tobacco*, and butter." (Stats. 1987, ch. 1498, § 3, pp. 5778-5779, italics added.) In the 1997 amendments to section 1714.45, the Legislature eliminated tobacco from the list of enumerated products in subdivision (a). The Legislature also added the following subdivisions:

"(b) This section does not exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions, but does exempt the sale or distribution of tobacco products by any other person, including, but not limited to, retailers or distributors. [¶] . . . [¶]

"(f) It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that *there exists no statutory bar to tobacco-related personal injury, wrongful death, or other tort claims against tobacco manufacturers* and their successors in interest by California smokers or others who have suffered or incurred injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify that *such claims which were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense.*

---

[1]All statutory references are to the Civil Code unless otherwise specified.

[2]The retroactivity of section 1714.45 is currently pending before the California Supreme Court in *Naegele v. R.J. Reynolds Tobacco Co.* (S090420, review granted Oct. 18, 2000). Barker, in his opening brief, cited *Naegele.*

"(g) This section shall not be construed to grant immunity to a tobacco industry research organization." (Stats. 1997, ch. 570, § 1, italics added.)[3]

Additionally, in an uncodified part of the legislation, the Legislature stated: "The Legislature hereby finds and declares that to the extent that the common law rules as to product liability actions with respect to tobacco were superseded by the version of Section 1714.45 of the Civil Code added by Chapter 1498 of the Statutes of 1987, this act restores those common law rules with respect to the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest." (Stats. 1997, ch. 570, § 2.)

■ In construing a statute, the task of the court is to determine and give effect to the Legislature's intent. (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1095 [282 Cal.Rptr. 841, 811 P.2d 1025]; *People v. Freeman* (1988) 46 Cal.3d 419, 425 [250 Cal.Rptr. 598, 758 P.2d 1128].) " 'In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.' " (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1055 [48 Cal.Rptr.2d 1, 906 P.2d 1057].) "The words must be construed in context in light of the nature and obvious purpose of the statute where they appear." (*Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 354 [257 Cal.Rptr. 356].) The statute "must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity." (*Beaty v. Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 902 [231 Cal.Rptr. 128].)

■ Potentially conflicting statutes must be harmonized whenever possible. (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086 [90 Cal.Rptr.2d 334, 988 P.2d 67].) " ' [T]he law shuns repeals by implication, . . .' [Citation.] 'The presumption against implied repeal is so strong that, "To overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together." . . . Courts have also noted that implied repeal should not be found unless ". . . the later provision gives

---

[3]Prior to the 1997 amendments, subdivision (b) of section 1714.45 contained language that was moved by the 1997 amendments to subdivision (c). This language is: "For purposes of this section, the term 'product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty."

undebatable evidence of an intent to supersede the earlier . . . ." ' " (*People v. Hazelton* (1996) 14 Cal.4th 101, 122 [58 Cal.Rptr.2d 443, 926 P.2d 423], italics omitted; *Bernasconi Commercial Real Estate v. St. Joseph's Regional Healthcare System* (1997) 57 Cal.App.4th 1078, 1082 [67 Cal.Rptr.2d 475].) In order for a subsequent statute to repeal or supersede an earlier statute, " ' "the former must constitute a revision of the entire subject, so that the court may say that it was intended to be a substitute for the first." ' " (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 43 [283 Cal.Rptr. 584, 812 P.2d 931]; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 379 [20 Cal.Rptr.2d 330, 853 P.2d 496].)

██ Barker, in arguing the Legislature intended to abrogate the statute of limitations for tobacco-related wrongful death suits, focuses on the language of section 1714.45, subdivision (f), which states such suits "shall be determined on their merits, *without the imposition of any claim of statutory bar or categorical defense*" (italics added) but he ignores the context of the language. The context of the language is a statute providing a "statutory bar" or "categorical defense," i.e., an immunity, from product liability lawsuits for certain enumerated consumer products. The context is an amendment that eliminates the previously granted immunity for tobacco-related product liability suits. When read in context, the language of the amendments unambiguously is directed at the elimination of the previously granted immunity. Subdivision (f) of section 1714.45 makes clear the Legislature's position that the statutory immunity that had existed had been eliminated by the 1997 amendments and such cases could proceed on the merits.

Section 1714.45 contains no reference to the statute of limitations statute. The statute of limitations for wrongful death suits is contained in Code of Civil Procedure section 340, subdivision (3).[4] The 1997 amendments to section 1714.45 make no reference to Code of Civil Procedure section 340, subdivision (3). Barker's claim depends on a repeal by implication, i.e., that the 1997 amendments to section 1714.45, by implication, repealed the limitations period for tobacco-related wrongful death suits otherwise contained in Code of Civil Procedure section 340, subdivision (3). As we noted above, repeals by implication are strongly disfavored and will be found only if a later statute evidences " ' "undebatable evidence of an intent to supersede" ' " an earlier statute and the two statutes are so completely irreconcilable " ' "that [they] cannot have concurrent operation." ' " (*People v. Hazelton, supra*, 14 Cal.4th 101, 122, italics omitted.) Such is not the case here. An amendment eliminating statutory immunity for certain lawsuits is not

---

[4]Code of Civil Procedure section 340, subdivision (3) provides a one-year limitations period "for the death of one caused by the wrongful act or neglect of another."

inconsistent with a statute requiring that such lawsuits be brought within certain time limits. The two statutes here can readily be harmonized and operate concurrently.[5] This is not a situation that supports a repeal by implication.

Barker also suggests the Legislature in its 1997 amendments to section 1714.45 intended to revive previously barred tobacco-related wrongful death suits. The general rule is that legislation is to be construed to operate prospectively only and not to apply retroactively to proceedings that began before legislation was amended unless there is clear legislative intent for retroactive application.[6] (See *Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159]; *Russell v. Superior Court* (1986) 185 Cal.App.3d 810, 814-817 [230 Cal.Rptr. 102]; *California Country Club Homes Assn. v. City of Los Angeles* (1993) 18 Cal.App.4th 1425, 1433 [22 Cal.Rptr.2d 917].) Here, as noted above, there is no language in the 1997 amendments reflecting any intent to alter the statute of limitations for product liability cases, or for tobacco-related cases in particular. More specifically, there is no language in the 1997 amendments that reflects any intent to revive suits that could have been brought before the statutory immunity for tobacco-related injuries or deaths became effective in 1988. (Stats. 1987, ch. 1498, § 3, pp. 5778-5779, adding section 1714.45 to the Civil Code.)[7] In the absence of any language showing an intent for a retroactive application, particularly as to such a long-lapsed cause of action, we must presume the Legislature intended the amendments to act prospectively only. (Contrast Pen. Code, § 803, subd. (g) [expressly reviving the

---

[5]Barker argues the purpose of having limitation periods, i.e., the promotion of " ' "justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared" ' " (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 756 [76 Cal.Rptr.2d 749, 958 P.2d 1062]) do not support a conclusion his suit is untimely. He argues justice is not promoted by immunizing Brown (which is intentionally poisoning people), Brown is not surprised and "[a]s far as evidence being lost, memories fading, and witnesses disappearing, Brown concealed the evidence of unhealthiness . . . so that only memories of the victims remained." It is a matter for the Legislature, not the courts, to weigh these policies and determine the applicable limitations period. In this case, the plain language of the statute does not show an intent to abrogate the limitations period for tobacco-related injuries.

[6]Barker cites a number of court cases holding statutes can be retroactively applied. We do not dispute that statutes can have a retroactive application; however, the question is whether the Legislature, in enacting or amending a specific statute, intended a retroactive application. No such intent appears in the 1997 amendments, particularly as to a claim that was already time-barred when the statutory immunity for tobacco-related products liability cases was enacted in 1987.

[7]The 1987 version of section 1714.45, which granted complete immunity for tobacco-related injuries, provided in former subdivision (c) that the statute applied to "all product liability actions pending on, or commenced after, January 1, 1988." (Stats. 1987, ch. 1498, § 3, p. 5779.)

limitations period for sexual offenses committed against minors]; *People v. Frazer* (1999) 21 Cal.4th 737, 751-752 [88 Cal.Rptr.2d 312, 982 P.2d 180] [express language in Pen. Code, § 803, subd. (g) reflected an intent to act to revive the previously expired limitations period].)[8]

Finally, we note that even if we were to find an ambiguity in the language of the 1997 amendments to section 1714.45, the legislative intent is made absolutely plain by its declaration of intent in the uncodified part of the statute. The Legislature declared its intent was only to eliminate the total immunity previously granted in section 1714.45 from tobacco-related product liability suits and to thereby restore the common law rules relating to lawsuits for inherently dangerous consumer products. Had the Legislature intended a complete abrogation of the limitations period for tobacco-related product liability suits or the revival of long time-barred suits, it would have so stated in its declaration. (Stats. 1997, ch. 570, § 2.)

No reversal is merited on this ground.

## II

### *Delay of Limitations Period*

Barker contends accrual of his wrongful death suit against Brown was delayed because of Brown's fraudulent misrepresentations about the dangers of tobacco and Barker's failure to earlier discover the injury.

In his complaint Barker alleged, upon information and belief, that from 1954 to 1962 Brown publicly misrepresented that cigarettes were healthy with an intent to induce Barker's father to rely on these misrepresentations; Barker's father relied on these representations to his detriment; and, as a result of his reliance, Barker's father died from emphysema, bronchogenic carcinoma and lung cancer. Barker's father would not have smoked cigarettes had he been aware of the concealed facts. Barker alleged that on

---

[8]In a supplemental letter brief, Barker argues *Souders v. Philip Morris Inc.* (2001) 87 Cal.App.4th 756 [104 Cal.Rptr.2d 821], review granted May 16, 2001, S096570, supports his position the 1997 amendments were intended to apply retroactively and to revive his lawsuit. *Souders* does not support Barker's position; indeed, it supports the dismissal in this case. *Souders* holds the 1997 amendments apply to wrongful death or personal injury suits that accrue after January 1, 1998. Barker's action accrued long before January 1, 1998. *Souders* holds section 1714.45 is to be retroactively applied only to the extent that an action accruing after January 1, 1998, may be based on pre-1998 tobacco use. Thus, the court held the plaintiffs could proceed with their suits for wrongful death and personal injury that accrued in 1999, when one of the plaintiffs died from and the other was diagnosed with tobacco-related illnesses, even though the illnesses were the result of pre-1998 tobacco use. *Souders* did not hold the Legislature intended to revive tobacco-related wrongful death actions that had lapsed before the 1997 amendments.

December 1, 1998, while viewing the Internet, he found statements indicating that for many years tobacco companies had concealed information about the unhealthiness of cigarettes. In September 1999, Barker read a newspaper article, quoting United States Attorney General Janet Reno as stating that tobacco companies for more than 45 years had conducted business without regard to the truth, the law or the health of the American people, and that concealing the dangers of tobacco had begun in the 1950's. In October 1999, Barker found another Web site detailing the tobacco companies' concealment of the unhealthfulness of cigarettes.

While generally the statute of limitations for a wrongful death accrues upon the death of the individual, accrual may be delayed if the plaintiff establishes the defendant fraudulently concealed facts that would have led him to discover his potential cause of action. (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283 [87 Cal.Rptr.2d 222, 980 P.2d 927]; *Snow v. A. H. Robins Co.* (1985) 165 Cal.App.3d 120, 127-128 [211 Cal.Rptr. 271]; Code Civ. Proc., § 338.) In delayed discovery cases, the limitations period begins to run once the plaintiff has notice or information about circumstances sufficient to put a reasonable person on inquiry notice, i.e., the limitations period begins to run once the plaintiff has a suspicion of wrongdoing. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 [245 Cal.Rptr. 658, 751 P.2d 923]; *Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1055 [84 Cal.App.4th 315f, 100 Cal.Rptr.2d 223].)

Barker did not raise this issue below. He did not seek to amend his complaint on the basis of delayed discovery; he only argued section 1714.45 abrogated the statute of limitations for tobacco-related wrongful death suits.[9] Since Barker failed to raise the issue below or seek amendment of his complaint, he waived this issue for appeal. (See *Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1256 [241 Cal.Rptr. 22, 743 P.2d 1279] [party may not raise new theory for the first time on appeal].) Further, even if the issue were not waived, it would fail on the merits.

While Barker alleged facts indicating he viewed articles on the Internet in 1998-1999 discussing concealment of information by tobacco companies, he did not allege any facts indicating he lacked any knowledge, from other sources, about the unhealthfulness of cigarettes during the 36 years between his father's 1962 death and his 1998 viewing of an article on the Internet.

[9]Nor did Barker seek to amend his complaint to allege that Brown concealed facts related to the addictiveness of cigarettes, failed to warn Barker's father about addictiveness, that the cigarettes were defectively manufactured, or that Brown breached an express warranty; therefore he has also waived these issues. We note that as to Barker's express warranty claim, it would also fail as being untimely.

Regardless of any concealment by Brown, it has been a matter of common knowledge since at least 1965 that cigarette smoking is not healthy. That is when Congress required health warnings on cigarette packages. (Federal Cigarette Labeling and Advertising Act of 1965 (Pub.L. No. 89-92 (July 27, 1965) 79 Stat. 283); 15 U.S.C. § 1333.) Under these circumstances, Barker was put on inquiry notice many, many years ago and failed to diligently pursue his claim.

No reversal is merited on this ground.

### DISPOSITION

The judgment is affirmed. Each side to bear its own costs.

Haller, J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2001.