Filed 1/17/23 Curtis v. Health CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAMES CURTIS et al., | D079266 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2020-00015803-CU-PA-CTL) |
| PALOMAR HEALTH et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge. Affirmed.

Hamilton & Associates, Ben-Thomas Hamilton, Aleries Lau, and Alec F. Dea for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Craig T. Mann, and Corinne C. Bertsche for Defendants and Respondents.


Plaintiffs James Curtis and Barbara Cruz appeal the summary judgment in their action against defendants Palomar Health and five of its nurses for the wrongful death of their mother. The trial court ruled the action was barred because plaintiffs did not comply with time requirements

of the Government Claims Act (the Act; Gov. Code, § 810 et seq.; undesignated section references are to this code). We affirm.

I.

BACKGROUND

Plaintiffs' mother went to Palomar Medical Center, a hospital owned and operated by Palomar Health, for a routine surgical procedure on December 26, 2018. She died later that day in the recovery room. A physician informed Curtis immediately after his mother's death that she likely died from a pulmonary embolism, a surgical byproduct, or comorbidities, and not from any negligence or fault on the part of physicians or hospital staff. Curtis relayed that information to Cruz on the same day. Plaintiffs nevertheless suspected on the day their mother died that something was wrong with her care.

Plaintiffs retained counsel in April 2019. Counsel requested copies of plaintiffs' mother's medical records and received them on June 10, 2019. On the bottom of 123 of the 143 pages of the records, Palomar Health is identified as "A California Public Healthcare District." The physicians and nurses involved in the care and treatment of plaintiffs' mother were identified by name in the medical records.

On December 20, 2019, plaintiffs' counsel mailed a 90-day notice of intent to sue pursuant to Code of Civil Procedure section 364[1] to Palomar Health and Palomar Medical Center, as well as separate notices to five

---

[1]     "No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action." (Code Civ. Proc., § 364, subd. (a).) "No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered." (*Id.*, § 364, subd. (b).)

nurses at the same address. The notices alleged that plaintiffs' mother died from the addressees' failure to monitor and treat her properly for the surgery on December 26, 2018, and that plaintiffs intended to commence an action against the addressees after 90 days from the date of service.

In response to the 90-day notice, a risk claims and insurance analyst for Palomar Health mailed plaintiffs' counsel a letter on January 10, 2020, stating that the claim was "being returned because it was not presented within six months after the event or occurrence as required by law," and therefore "no action was taken on the [c]laim." The letter advised plaintiffs that their "only recourse at this time is to apply without delay to Palomar Medical Center Escondido for leave to present a late [c]laim." The letter was printed on Palomar Health letterhead and identified Palomar Medical Center Escondido as a "facility of Palomar Health."

Plaintiffs mailed a request to present a late claim to Palomar Medical Center Escondido on February 3, 2020. No response was given.

On March 16, 2020, plaintiffs filed a complaint against Palomar Health, Palomar Medical Center, five nurses employed by Palomar Health, and others who are not parties to this appeal. Plaintiffs alleged defendants negligently performed surgery and follow-up care on their mother and thereby caused her death. They sought general and special damages and costs of suit. The complaint contained no allegations of compliance with the Act.

Palomar Health and the five nurses (collectively defendants) answered the complaint by asserting a general denial and multiple affirmative defenses, including the failure of plaintiffs to comply with the claim presentation requirements of the Act. Defendants later moved for summary judgment (Code Civ. Proc., § 437c) on the basis of plaintiffs' noncompliance

with the Act.  In support of the motion, they submitted declarations from Palomar Health's director of risk management for regulatory compliance and chief human resources officer, who stated that Palomar Health is a public entity that owns and operates Palomar Medical Center and employed the five nurses on December 26, 2018.  Defendants also submitted copies of the notices of intent to sue, Palomar Health's response, several pages from plaintiffs' mother's medical records stating Palomar Health is a public health care district, and discovery responses in which plaintiffs admitted they suspected on December 26, 2018, that something was wrong with their mother's care and treatment.

In opposition to the motion, plaintiffs argued that they substantially complied with the claim presentation requirements of the Act by mailing the 90-day notices of intent to sue, which provided enough information for defendants to investigate and evaluate plaintiffs' claim.  Plaintiffs further argued that Palomar Health waived its right to demand compliance with the Act by failing to notify plaintiffs of the insufficiency of their claim, because only Palomar Medical Center responded to the notice.  Finally, plaintiffs argued their claims against the nurses were not barred, because plaintiffs did not learn the nurses were employees of a public entity within six months of accrual of their claim.  In their opposition papers, plaintiffs included declarations stating that they did not know Palomar Health was a public entity or that it employed the nurses, that the medical records did not indicate Palomar Health was a public entity, and that physicians told them their mother "likely died as a result of, 'either a pulmonary embolus, surgical byproduct, or her comor[bid]ities,' not as the result of negligence or wrongdoing."  Plaintiffs also included a copy of their request to present a late claim to Palomar Medical Center.

4

The trial court ruled there were no triable issues of material fact on whether the claim was timely presented, whether Palomar Health waived the right to object to the lateness of the claim, or whether plaintiffs knew or had reason to know that the nurses were employees of a public entity within the time limit to submit the claim, and granted the motion for summary judgment. The court later entered a judgment in favor of Palomar Health and the nurses and against plaintiffs.

## II.

## DISCUSSION

In asking us to reverse the judgment, plaintiffs repeat the arguments they made in opposition to the summary judgment motion and add an argument that barring their claims for noncompliance with the Act would be contrary to public policy. After setting forth the standard of review, we shall consider and reject each of plaintiffs' arguments.

A.     *Standard of Review*

We review the trial court's ruling on the motion for summary judgment de novo to determine whether the record discloses any triable issue of fact material under the applicable law. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *Meda v. Autozone, Inc.* (2022) 81 Cal.App.5th 366, 374.) We view the evidence in the light most favorable to plaintiffs and resolve any dispute, doubt, or ambiguity in their favor. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768; *Meda*, at p. 374.) If there are no triable issues of material fact and defendants are entitled to judgment under the applicable law, the motion for summary judgment was properly granted; if those conditions are not satisfied, the motion should have been denied. (Code Civ. Proc., § 437c, subd. (c); *Aguilar*

*v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); *EHP Glendale, LLC v. County of Los Angeles* (2011) 193 Cal.App.4th 262, 273-274.)

B.    *Compliance with the Act*

Plaintiffs first argue the trial court erred by ruling that their failure to present their claim within six months of their mother's death barred their lawsuit against Palomar Health.  They contend the Act requires only substantial compliance, and they substantially complied by mailing a 90-day notice of intent to sue that asserted a claim for compensation for the wrongful death of their mother that could result in litigation if not paid.  Plaintiffs also suggest there is a triable issue of material fact on whether their claim accrued on the day their mother died, because physicians told them she died not from any negligence in her care but from a pulmonary embolus, surgical byproduct, or comorbidities.  As we shall explain, the trial court correctly determined plaintiffs failed to meet the claim presentation deadline.

The Act requires a "claim relating to a cause of action for death" be presented to a public entity "not later than six months after the accrual of the cause of action." (§ 911.2.)  The claim must include, among other information, the name and address of the claimant, the date and place of the occurrence or transaction giving rise to the claim, a general description of the injury or loss incurred, and the name(s) of the public employee(s) causing the injury or loss, if known. (§ 910.)  With exceptions not at issue here, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board." (§ 945.4.)  Hence, "[i]n actions for damages against local public entities, the [Act] require[s] timely filing of a proper claim as condition precedent to the

6

maintenance of the action. [Citations.] Compliance with the [Act] is mandatory [citation]; and failure to file a claim is fatal to the cause of action." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454 (*City of San Jose*).)

The problem with plaintiffs' action is that they did not submit a *timely* claim to Palomar Health. The claim was due within six months of the date of accrual (§ 911.2), which for purposes of the Act is the date the claim would have accrued under the statute of limitations that would apply had the dispute been between private entities (§ 901; *Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1118 (*Willis*)). A wrongful death claim generally accrues on the date of death. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404; *Ferguson v. Dragul* (1986) 187 Cal.App.3d 702, 709.) Plaintiffs' mother died on December 26, 2018, and six months later was June 26, 2019. Plaintiffs, however, did not notify Palomar Health of their claim for wrongful death until December 20, 2019, nearly six months late. Their subsequent lawsuit against Palomar Health was barred. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738 (*City of Stockton*) [" 'failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity' "]; *City of San Jose*, *supra*, 12 Cal.3d at p. 454 [timely claim presentation is "mandatory"].)

Plaintiffs argue their claim did not accrue on December 26, 2018, the day their mother died, because "in their lay understanding" they "did not suspect someone had done something wrong on that date." In support of this argument, plaintiffs assert they were told their mother died from a cause other than negligence in the surgery or post-surgical care, and they were "given [no] indication that the hospital or treating doctors and nurses lied to them about the circumstances surrounding their mother's death." Plaintiffs

7

further assert "DEFENDANTS have pointed to no evidence in the record that PLAINTIFFS knew anything about the specific wrongdoing of any individual nurses, which would be needed to begin the accrual of any time limitations with respect to any nurses." We reject this argument for procedural and substantive reasons.

The argument has been forfeited. The argument was raised for the first time in plaintiffs' reply brief, and we ordinarily disregard such belated arguments. (E.g., *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982; *Cox v. Griffin* (2019) 34 Cal.App.5th 440, 453.) Plaintiffs further forfeited the argument by failing to cite any supporting legal authorities. (E.g., *County of Sacramento v. Rawat* (2021) 65 Cal.App.5th 858, 870 (*County of Sacramento*); *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

The argument lacks merit. Plaintiffs apparently rely on the delayed discovery rule, which would delay accrual of their cause of action until they discovered or through reasonable diligence should have discovered the wrongful cause of their mother's death. (*Larcher v. Wanless* (1976) 18 Cal.3d 646, 654; *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 413.) Under the delayed discovery rule, "the limitations period begins to run once the plaintiff has a suspicion of wrongdoing." (*Barker v. Brown & Williamson Tobacco Corp.* (2001) 88 Cal.App.4th 42, 50; accord, *Carter*, at p. 413.) In responses prepared by counsel and verified by plaintiffs to interrogatories asking the date on which they "first suspect[ed] that something was wrong as it pertains to [their mother's] care and treatment," plaintiffs answered, "On the date of [her] death, December 26, 2018." Plaintiffs cannot avoid these unambiguous responses and create a triable issue of material fact on the accrual date of their wrongful death cause

8

of action by opposing the summary judgment motion with declarations suggesting they did not suspect any wrongdoing at the time their mother died because unidentified physicians told them that she did not die from any negligence or wrongdoing and they thereafter retained counsel to determine the cause of death. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 [declarations contradicting discovery responses are disregarded on summary judgment motion]; *Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1088 [plaintiff may not avoid summary judgment by declaration contradicting interrogatory responses without explanation].)

Nor did plaintiffs' alleged ignorance of "the specific wrongdoing of any individual nurses" prevent accrual of their cause of action on the date their mother died. "[I]gnorance of the identity of a defendant does not delay accrual of a cause of action because the defendant's identity is not an element of a cause of action." (*Estill v. County of Shasta* (2018) 25 Cal.App.5th 702, 709 (*Estill*).) The claim accrues "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that *someone* has done something wrong to her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110, italics added.) The plaintiff "need not be aware of the specific 'facts' necessary to establish the claim . . . . So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Id.* at p. 1111.) Since plaintiffs suspected someone had done something wrong on the date their mother died, they had six months from that date to present their claim. (§ 911.2.) They did not.

We also reject plaintiffs' contention their lawsuit is not barred because they substantially complied with the Act by serving the 90-day notice of intent to sue less than one year after their mother died and including in the

9

notice all the information required by section 910. Plaintiffs are correct that the Act "requires only substantial compliance with the claims presentation requirement." (*Westcon Construction Corp. v. County of Sacramento* (2007) 152 Cal.App.4th 183, 200.) They are also correct that service on a public entity of a 90-day notice of intent to sue (Code Civ. Proc., § 364) may constitute such compliance if the notice asserts a claim that if not resolved will result in litigation (*Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 709 (*Phillips*); *Watts v. Valley Medical Center* (1992) 8 Cal.App.4th 1050, 1058). The substantial compliance doctrine, however, applies to the *signature* and *content* requirements of a claim (§§ 910, 910.2), *not* to the *timely presentation* requirement (§ 911.2). (See § 910.8 [public entity may notify claimant of defects in claim that does not substantially comply with §§ 910 and 910.2]; *City of San Jose, supra,* 12 Cal.3d at pp. 455-457 [discussing doctrine of substantial compliance with content requirements]; *Olson v. Manhattan Beach Unified School Dist.* (2017) 17 Cal.App.5th 1052, 1060 [" 'The doctrine of substantial compliance is normally raised where a timely but deficient claim has been presented to the public entity.' "].)[2] Strict

---

[2] Most of the cases plaintiffs cite as part of their substantial compliance argument concerned the content requirements of a claim, not the timeliness requirement. (See *Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446 [claim is sufficient if it fairly describes what public entity allegedly did and provides sufficient information to allow entity to investigate claim]; *Phillips, supra,* 49 Cal.3d at pp. 709-710 [written notice of claim for damages that threatens litigation and allows timely investigation substantially complies with Act]; *City of San Jose, supra,* 12 Cal.3d at p. 457 [discussing content of claim required in class action]; *Green v. State Center Community College Dist.* (1995) 34 Cal.App.4th 1348, 1358 [correspondence that clearly asserts claim for compensation that will result in litigation if not paid is claim sufficient to trigger notice-waiver provisions of Act]; *Lacy v. City of Monrovia* (1974) 44 Cal.App.3d 152, 155 [written claim that contains information sufficient to give public entity

compliance with time deadlines in the Act is required. (*Ard v. County of Contra Costa* (2001) 93 Cal.App.4th 339, 346; *Collins v. County of Los Angeles* (1966) 241 Cal.App.2d 451, 460 (*Collins*).) Hence, plaintiffs' presentation of a claim six months after the deadline barred their lawsuit. (§ 945.4; *City of Stockton, supra,* 42 Cal.4th at p. 738.)

C.     *Waiver of Compliance with the Act*

Plaintiffs next argue Palomar Health waived its right to object to the untimeliness of their claim because only Palomar Medical Center responded to it. As part of this argument, plaintiffs also contend that if Palomar Health and Palomar Medical Center "are one in [*sic*] the same," then the request to Palomar Medical Center to file a late claim should be treated as a request to Palomar Health, and the filing of the complaint within 45 days of service of the request "represents substantial compliance with the tort claims process." We are not persuaded.

We begin by setting out the applicable law regarding waiver of timeliness objections to claims. When a claimant presents a claim after the six-month deadline of section 911.2 and does not include an application to present a late claim, the public entity "may, at any time within 45 days after the claim is presented, give written notice to the person presenting the claim

opportunity to investigate, determine facts, and settle without litigation satisfies purposes of Act].) Another case cited by plaintiffs held the filing of a complaint two days after presentation of a claim was not a ground for summary judgment, because "the waiting period requirement is not part of the cause of action but a procedural condition precedent to suit." (*Cory v. City of Huntington Beach* (1974) 43 Cal.App.3d 131, 135.) "Our Supreme Court has since rejected this theory . . . . [Citations.] *Cory* also 'applied a test of substantial compliance' [citation], which our Supreme Court has rejected." (*Lowry v. Port San Luis Harbor Dist.* (2020) 56 Cal.App.5th 211, 220 (*Lowry*).) Thus, plaintiffs cited *no authority* supporting application of the substantial compliance doctrine to *time requirements* of the Act.

11

that the claim was not filed timely and that it is being returned without further action." (§ 911.3, subd. (a).) The statute then prescribes the form of the notice to be given, which includes a warning that the claimant's "only recourse" is to apply to the public entity for leave to present a late claim. (*Ibid*.) The statute goes on to provide: "Any defense as to the time limit for presenting a claim described in subdivision (a) is waived by failure to give the notice set forth in subdivision (a) within 45 days after the claim is presented, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant." (§ 911.3, subd. (b).) Thus, when a public entity notifies a claimant the claim is late, it "must warn the [claimant] that his or her only recourse is to apply without delay to the public entity for leave to present a late claim. [Citation.] Failure to give the warning within 45 days after the claim was presented results in waiver of the defense that the government claim was untimely." (*Estill*, *supra*, 25 Cal.App.5th at p. 709.)

The evidence presented to the trial court on the motion for summary judgment showed Palomar Health gave plaintiffs the required late-claim notice and did not waive its untimeliness objection. The evidence included the 90-day notice of intent to sue that plaintiffs addressed to both Palomar Health and Palomar Medical Center and mailed to them in the same envelope on December 20, 2019. The evidence also included a notice of return of late claim on Palomar Health letterhead that was mailed to plaintiffs' counsel on January 10, 2020. The notice identified Palomar Medical Center as a "facility of Palomar Health" and used the language prescribed by section 911.3, subdivision (a), including the warning that plaintiffs' "only recourse at this time is to apply without delay to Palomar Medical Center Escondido for

12

leave to present a late [c]laim." Palomar Health submitted a declaration from its director of risk management for regulatory compliance, who stated that Palomar Health is a public entity that owns and operates Palomar Medical Center, and that Palomar Health treated plaintiffs' notice of intent to sue letter as a claim under the Act. The notice of return of late claim thus complied with the time and content requirements of section 911.3.

Further, when reasonably read, the notice appears to have been served on behalf of both Palomar Health and Palomar Medical Center, just as both were served with one 90-day notice of intent to sue by plaintiffs. (See *Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 438 [writing must be given reasonable interpretation]; *Meier v. Paul X. Smith Corp.* (1962) 205 Cal.App.2d 207, 217 [letters part of same transaction should be considered together].) Plaintiffs cite no legal authority requiring separate notices under section 911.3 from Palomar Health and Palomar Medical Center, and we have found none. The single notice of return of late claim satisfied the statutory purpose of informing plaintiffs their claim was late and how they might be able to perfect the claim by applying for leave to present a late claim. (See *Phillips*, *supra*, 49 Cal.3d at p. 706 [discussing purposes of notice and defense-waiver provisions of Act].) We therefore reject plaintiffs' contention that Palomar Health did not timely notify plaintiffs their claim was late and thereby waived its timeliness objection.

We turn now to plaintiffs' contention, apparently presented as an alternative to their waiver argument, that their request to Palomar Medical Center to present a late claim should be treated as a request to Palomar Health, and that plaintiffs substantially complied with the Act by filing their complaint within the period Palomar Health had to act on the request. Plaintiffs' counsel mailed a request to present a late claim (§ 911.4, subd. (a))

13

to Palomar Medical Center on February 3, 2020,[3] and never received a response. A response would have been due within 45 days, and if not given by then the application would have been deemed denied on the 45th day, i.e., on March 19, 2020. (§ 911.6, subds. (a), (c).) Plaintiffs filed their complaint on March 16, 2020. By taking these steps, plaintiffs say they "clearly gave notice and opportunity to PALOMAR HEALTH and PALOMAR MEDICAL CENTER to resolve this case before litigation in substantial compliance with the Government Claims Act." We disagree.

Plaintiffs failed to comply in several material respects with provisions of the Act regarding late claims. The Act provides an application to present a late claim "*shall* be presented to the public entity . . . within a reasonable time *not to exceed one year after the accrual of the cause of action* and shall state the reason for the delay in presenting the claim." (§ 911.4, subd. (b), italics added.) The Act further provides that "[i]f an application for leave to present a claim is denied or deemed to be denied . . . a petition may be made to the court for an order relieving the petitioner from Section 945.4." (§ 946.6, subd. (a).) The petition must be filed within six months after the application to present a late claim is denied or deemed denied and must state that the application was made under section 911.4 and was denied or deemed denied, the reason for failure to present the claim within the time prescribed by section 911.2, and the information required for a claim by section 910. (§ 946.6, subd. (b).) Thus, to proceed with their lawsuit against Palomar

---

3    In moving for summary judgment, Palomar Health submitted a declaration from its director of risk management for regulatory compliance stating that it never received an application from plaintiffs for leave to present a late claim. "[O]n review of a grant of summary judgment for defendant[s], we view the evidence in the light most favorable to plaintiff[s] as the losing part[ies] below." (*Morris v. De La Torre* (2005) 36 Cal.4th 260, 265.) We therefore assume the truth of plaintiffs' evidence.

14

Health despite their failure to present a timely claim under the Act, plaintiffs were required either to obtain leave to file a late claim upon application made within one year after accrual of the claim, or, if leave were denied upon timely application, to obtain relief from the trial court upon petition filed within six months of the denial. Plaintiffs did neither.

Plaintiffs did not timely apply to Palomar Health for leave to present a late claim. We have already determined their cause of action accrued on December 26, 2018, the day their mother died, but they did not request leave to present a late claim until February 3, 2020, more than a month after the one-year deadline. Without a timely application for leave to file a late claim, Palomar Health had no power to allow the late claim to proceed. (*Hom v. Chico Unified School Dist.* (1967) 254 Cal.App.2d 335, 339; accord, *Coble v. Ventura County Health Care Agency* (2021) 73 Cal.App.5th 417, 421.) Plaintiffs concede they never filed a petition for relief from section 945.4 in the trial court and instead filed their complaint. The complaint, however, contains none of the information required for a petition (§ 946.6, subd. (b)) and makes no mention of the Act. Without a petition for relief from section 945.4 showing timely application for leave to file a late claim had been submitted, the trial court had no power to allow the late claim to proceed. (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779; accord, *Simms v. Bear Valley Community Healthcare Dist.* (2022) 80 Cal.App.5th 391, 405.) Plaintiffs also "failed to comply with the Act because [they] filed a complaint before [their late-claim application] was rejected." (*Lowry, supra,* 56 Cal.App.5th at p. 219.) On the record presented, we must reject plaintiffs' contention that "filing of the complaint represents substantial compliance with the tort claims process." (See *Simms,* at p. 400 [" 'Substantial compliance contemplates that there is at least some compliance with all of

15

the statutory requirements.' "]; *Collins, supra,* 241 Cal.App.2d at p. 460 [Act requires strict compliance with deadlines].)

D.    *Knowledge the Nurses Were Employees of a Public Entity*

Plaintiffs argue the trial court erroneously granted summary judgment in favor of the nurses because there are triable issues of fact on whether plaintiffs knew Palomar Heath was a public entity and the nurses were its employees within the six-month period for presenting a claim under the Act. Plaintiffs contend that within that period they neither knew nor had reason to know their mother's death resulted from an act or omission of a public entity employee, because the medical records led them to believe the medical staff at Palomar Health were not employees or agents of the hospital and the nurses were not identified as employees of Palomar Health by the Board of Registered Nursing. We find no error.

The general rule under the Act is that "a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred" under the Act. (§ 950.2.) Thus, if a lawsuit against a public entity for an injury caused by its employee is barred because no timely claim was presented to the entity, then a lawsuit against the employee is also barred, even if the claim was timely presented to the employee. (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838 (*Williams*); *Fisher v. Pickens* (1990) 225 Cal.App.3d 708, 718 (*Fisher*).) An exception to the general rule applies "if the plaintiff pleads and proves that he did not know or have reason to know, within the period for the presentation of a claim to the employing public entity . . . , that the injury was caused by an act or omission of the public entity or by an act or omission of an employee of the public entity in the scope of his employment

16

as a public employee." (§ 950.4.) To come within the exception, a plaintiff has the burden to plead and prove facts showing he neither knew nor had reason to know, within six months of accrual of the cause of action, that the person who allegedly caused the injury complained of was a public entity employee. (See *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990 (*DiCampli-Mintz*) [compliance with claim presentation requirements of Act is element of cause of action against public entity that plaintiff must prove]; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1243 (*State of California*) [plaintiff must allege facts demonstrating or excusing compliance with claim presentation requirements of Act].) As we shall explain, plaintiffs did not sustain that burden in this case.

In support of the motion for summary judgment, defendants submitted evidence that Palomar Health is a public entity that employed the nurses on December 26, 2018, the day plaintiffs' mother died. Plaintiffs alleged in their complaint that the nurses were agents of Palomar Health, "and in so doing the things hereinafter alleged," which included providing care and treatment to plaintiffs' mother, the nurses "were acting within the course and scope of such agency." Defendants submitted interrogatory responses that plaintiffs suspected wrongdoing on the day their mother died, which showed their wrongful death cause of action accrued on that date, and a copy of the notice of intent to sue served on December 20, 2019, which showed plaintiffs did not present a claim within six months of accrual, as required by section 911.2. Thus, under the general rule, since plaintiffs' action against Palomar Health was barred for failure to present a timely claim (§ 945.4; *City of Stockton*, *supra*, 42 Cal.4th at p.738), their action against the nurses was also barred (§ 950.2; *Fisher*, *supra*, 225 Cal.App.3d at p. 718). Because defendants made a prima facie showing that the general rule of section 950.2 applied, the

17

burden shifted to plaintiffs to show the exception of section 950.4 applied. (See *Aguilar*, *supra*, 25 Cal.4th at p. 850 [discussing shifting burden on summary judgment motion]; *Santos v. Los Angeles Unified School Dist.* (2017) 17 Cal.App.5th 1065, 1074 [when defendant showed plaintiffs did not comply with Act, burden shifted to plaintiffs to show basis for excusing noncompliance].) Plaintiffs failed to do so.

As noted above, plaintiffs had to "plead[ ] and prove[ ]" that they neither knew nor had reason to know during the six-month claim presentation period that a public entity or its employee caused their mother's death. (§ 950.4.) Plaintiffs' complaint, however, contains no references to the Act and alleges no facts showing or excusing compliance with the Act's claim presentation requirements. This pleading defect "necessarily bars" suit against the nurses for any negligence they might have committed as employees of Palomar Health in caring for plaintiffs' mother. (*Hopper v. Allen* (1968) 266 Cal.App.2d 797, 799; see *State of California*, *supra*, 32 Cal.4th at p. 1239 [complaint that fails to allege facts showing or excusing compliance with claim presentation requirements of Act fails to state cause of action].)

Plaintiffs also presented no evidence in opposition to the summary judgment motion that was sufficient to prove that during the claim presentation period they neither knew nor had reason to know the employment status of the nurses. Although plaintiffs and their counsel submitted declarations stating that when the 90-day notices of intent to sue were served they did not know Palomar Health was a public entity that employed the nurses, that was not enough to avoid summary judgment. "[S]ection 950.4 requires the exercise of due diligence within [the claim presentation] period by plaintiffs and their attorneys." (*Leake v. Wu* (1976)

18

64 Cal.App.3d 668, 673 (*Leake*).) "When there is a readily available source of information from which the potential liability of a government entity may be discovered, a failure to use that source is deemed inexcusable." (*Department of Water & Power v. Superior Court* (2000) 82 Cal.App.4th 1288, 1294.) Plaintiffs and their counsel did not avail themselves of such sources.

Plaintiffs' mother's medical records, which plaintiffs' counsel obtained before expiration of the period to present a claim, identified Palomar Health as "A California Public Healthcare District" on nearly every page. The assertions of plaintiffs and their counsel that the medical records gave no indication Palomar Health was a public entity are thus plainly false and may be disregarded. (See *Aguilar, supra*, 25 Cal.4th at p. 856 [on summary judgment motion, court must determine what evidence could show or imply to reasonable trier of fact]; cf. *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 [on demurrer, court may disregard factual allegations contrary to documents properly before it].) The medical records also identified by name the physicians and nurses involved in the care and treatment of plaintiffs' mother. Although a form in the medical records stated that "[a]ll physicians and surgeons . . . are <u>not</u> employees or agents of the hospital," the form said nothing about the nurses' relationship to the hospital. A reasonable inference therefore is that nurses are employees. (See *Steven v. Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 871 ["mention of one matter implies the exclusion of all others"].) Although plaintiffs' counsel's inquiry to the Board of Registered Nursing did not confirm that inference, counsel could have made a "simple inquiry to the hospital, to determine whether the [nurses] might have been [public] employees." (*Leake, supra*, 64 Cal.App.3d at p. 673; see *Shank v. County of Los Angeles* (1983) 139 Cal.App.3d 152, 158 [plaintiff had burden to ascertain public status of

19

hospital].)  "Reasonable diligence during the [claim presentation period] would have given plaintiffs reason to know of [the nurses'] status, and therefore section 950.4 is inapplicable."  (*Leake,* at p. 674.)[4]

E.    *Public Policy*

Plaintiffs' last argument for reversal is that barring their claims is contrary to public policy.  Plaintiffs contend that barring a "meritorious and meaningful claim" such as theirs "based on a minor technicality when a public entity has been put on sufficient notice will hinder the interest of justice."  They note the Legislature has shown concern for the rights of minors and incapacitated persons by requiring public agencies to allow such persons to file late claims if their minority or incapacity existed during the claim presentation period.  (See § 911.6, subd. (b).)  Plaintiffs contend similar concern should be shown to "grieving family members of deceased individuals" who were told physicians did nothing wrong and "should not be punished for believing the healthcare system did not fail them."  We reject this argument for three reasons.

First, plaintiffs did not include this public policy argument in their opposition to the motion for summary judgment.  Arguments that could have been but were not raised in the trial court ordinarily will not be considered on

---

4      Plaintiffs also cite *Rogers v. Centrone* (1968) 261 Cal.App.2d 361 in support of the argument the lawsuit against the nurses is not barred, because it was filed within six months of the rejection of their claim under the Act, as required by section 950.6.  The issue here, however, is not the timeliness of plaintiffs' lawsuit under section 950.6.  The issue is whether under section 950.4 their ignorance during the claim presentation period that the nurses were employees of Palomar Health excused their failure to present a claim to Palomar Health during that period.  There was no such issue in *Rogers,* because the "plaintiff presented a timely claim for damages" to the school district that employed the defendant.  (*Id.* at p. 363.)  *Rogers* thus does not assist plaintiffs.

20

appeal. (E.g., *Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635; *Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486.)

Second, plaintiffs cite no legal authority that supports the argument. The statute and case they cite (§ 911.6, subd. (b); *Draper v. City of Los Angeles* (1990) 52 Cal.3d 502) concern relief from untimely claims for minors or incapacitated persons. Plaintiffs have never asserted they were minors or were incapacitated during the claim presentation period and therefore were entitled to relief under the cited authorities. The cited authorities say nothing about excusing compliance with the claim presentation requirements of the Act for those who are grieving the loss of a family member and allegedly have meritorious claims against a public entity and its employees. A point asserted without citation of supporting authority is forfeited. (E.g., *County of Sacramento, supra,* 65 Cal.App.5th at p. 870; *Garcia v. Seacon Logix, Inc.* (2015) 238 Cal.App.4th 1476, 1489.)

Third, the argument has no merit. "Public policy supports the 'strict application' [citation] of the claims presentation requirements" of the Act. (*Willis, supra,* 48 Cal.App.5th at p. 1120.) "[T]he intent of the [A]ct is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the [A]ct are satisfied." (*Williams, supra,* 16 Cal.3d at p. 838.) The requirement that claims be presented within six months of accrual (§ 911.2) is designed to allow public entities to investigate claims when evidence is still available, to settle meritorious claims without unnecessary litigation, and to plan budgets. (*DiCampli-Mintz, supra,* 55 Cal.4th at p. 991, fn. 8.) To allow plaintiffs to avoid that requirement here because they were grieving the loss of their mother, presented the claim six days before the one-year anniversary of her

death, and contend their claim is meritorious, "would undercut the public policies and purposes that require that deadline be 'strict[ly]' applied." (*Willis*, at p. 1122.)  Enforcing the time requirement and barring plaintiffs' lawsuit for failure to comply with it, however, would be consistent with the intent of the Act to confine public entity liability to cases in which the claim presentation requirements have been met.  (*Williams*, at p. 838.)  The trial court's entry of summary judgment for defendants based on plaintiffs' failure to meet the requirements therefore was not contrary to public policy.

## III.

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.