Filed 5/18/23  Wright v. Regents of the U. of Cal. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WALI WRIGHT,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,<br><br>        Defendants and Respondents. | B317965<br><br>(Los Angeles County Super. Ct. No. 21STCV07386) |

APPEAL from judgments of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed.

Stephen Kent Rose for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Matthew S. Levinson; Kjar McKenna & Stockalper and Patrick E. Stockalper for Defendant and Respondent The Regents of the University of California.

Pollak, Vida & Barer, Daniel P. Barer and Hamed Amiri Ghaemmaghami for Defendant and Respondent County of Los Angeles.

———————————

Plaintiff Wali Wright (plaintiff) suffered injuries to his leg when a nurse and nurse assistant (nurses) repositioned him in his hospital bed while he was a patient at Olive View UCLA Medical Center (the hospital).  Plaintiff sued Los Angeles County (the county) and the University of California (Regents) for negligence based on a theory of vicarious liability.  Both parties demurred.  The county asserted that plaintiff had failed to comply with the claims presentation requirements in the Government Claims Act.  Regents asserted that plaintiff had failed to adequately plead it had an agency or ostensible agency relationship with the nurses.  The trial court sustained both demurrers without leave to amend.

On appeal, plaintiff contends that he adequately pled that the county should be equitably estopped from relying on the lack of compliance with the claims process as a defense to his action.  He further contends that he adequately alleged agency and ostensible agency between Regents and the nurses.  We disagree, and accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND
### I.     Facts

Plaintiff was an inpatient at Olive View UCLA Medical Center for approximately six months in 2018.  During his stay, nurses overtwisted plaintiff's leg while repositioning him in his bed, spraining his knee and tearing his medial meniscus.

2

## II. Procedural Background
### A. Original and first amended complaints

On May 16, 2019, plaintiff filed his original complaint.[1]  He subsequently filed a first amended complaint.  Neither the original nor the first amended complaints are included in the appellant's appendix.

### B. Second amended complaint
#### 1. *The complaint*

In September 2019, plaintiff filed a second amended complaint (SAC) for negligence against the county and Regents.[2]  Plaintiff alleged that Regents and the county, "acting through their employees," negligently caused plaintiff's injury.  He further alleged that "[Regents] knowingly permitted, aided, . . . and encouraged [the county] . . . to operate [the hospital] in the name of the University of California and as the actual, apparent, and ostensible agent of . . . [Regents]" and that Regents "thereby assumed liability" for the nurses' negligence.  Plaintiff further alleged that "[the county] concealed its relationship with UCLA Medical Center in violation of statute . . . and is equitably estopped from relying on claims statutes."

---

[1]      This action was filed in Alameda County Superior Court, and was transferred to Los Angeles County Superior Court in early 2021 upon motion by Regents.

[2]      Plaintiff also named the nurses as defendants, but as of the date of the trial court's ruling on the demurrers to the TAC, plaintiff had not filed proofs of service as to those parties.

## 2. *Demurrers*

Regents and the county separately demurred to the SAC.[3] The trial court sustained both demurrers with leave to amend. In sustaining Regents' demurrer, the trial court stated that "it is not clear if [p]laintiff is alleging that the [nurses] are the direct employees of [Regents] or ostensible agents of [Regents]," and the SAC does not "allege sufficient facts to support a finding that the other defendants were/are the ostensible agents of [Regents]." The trial court sustained the county's demurrer for failure to allege compliance or excuse from compliance with the Government Claims Act (Gov. Code, § 810 et seq.).[4] In doing so, it rejected plaintiff's argument that he alleged a sufficient basis to equitably estop the county from relying on the claims statute because he alleged "no facts to support the conclusion that [the county] 'concealed its relationship with UCLA Medical Center.'" The trial court also granted the county's request for judicial notice of "[t]he fact that Olive View Medical Center is operated by the County of Los Angeles, and not a separate entity."

## C. Third Amended Complaint

### 1. *The complaint*

In August 2021, plaintiff filed his operative third amended complaint (TAC), naming the same defendants and alleging the same claim, but this time describing the nurses as "joint employees" and "actual and ostensible employees" of defendants. The TAC also added allegations purporting to form a basis to

---

[3] The briefing on the demurrers to the SAC is not in the appellant's appendix.

[4] All further statutory references are to the Government Code unless otherwise stated.

4

equitably estop the county from asserting its defense under the Government Claims Act.  These allegations include:  The county "concealed its ownership and operation of LA County Olive View UCLA Medical Center from [p]laintiff and from the general public in violation of statute by calling the facility 'Olive View Medical center," i.e., by "removing the words 'LA County' from the facility's name and identifying the facility in most of its many and various publicly facing statements (including signage, labeling, documentation, and web pages)."  During his six month stay, plaintiff alleged he "never saw any sign, literature, document or heard anything indicating that the facility was owned or operated by [the county]."  Plaintiff alleged that he and his counsel "relied to their detriment" on the county's representations that the facility was named " 'Olive View UCLA Medical Center' " in refraining from filing a claim with the county "until . . . more [than] a year had elapsed after [plaintiff's] injury, and his time to file a government claim or an application for leave to present a late claim . . . had expired."

### 2. *Demurrers*

Defendants separately demurred to the TAC.  Following briefing and hearings on each demurrer, the trial court sustained both without leave to amend.

With respect to Regents, the trial court stated that plaintiff's allegations regarding agency were "contradictory and conclusory" because the nurses "cannot be both [the] direct employee and ostensible agent" of Regents, and thus Regents' "purported liability is still uncertain."  The trial court further stated that the TAC, like the SAC, "fails to allege sufficient facts to support a finding that [the nurses] were/are the ostensible agents of [Regents]" because it "does not allege sufficient facts to

establish that: (1) [Regents] made representations regarding the agency; (2) [p]laintiff justifiably relied on such representations; and (3) [p]laintiff was injured as a result of such reliance. [(See *J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 404.)]" The trial court also granted Regents' request for judicial notice of the hospital's license information shown on the California Health Facilities Information Database (available to the public on the internet), a legal description of the property ownership for the hospital's location from the Los Angeles County Tax Assessor's office, a provision from the County of Los Angeles Charter showing that the Director of Hospitals is in charge of supervising the county's hospitals, and of the fact that the hospital is "a County of Los Angeles Hospital."

With respect to the county, the trial court ruled that the TAC still "failed to plead sufficient facts to establish the second and fourth elements of estoppel," namely, that "the [c]ounty intended that its conduct would be acted upon, or so acted that [p]laintiff had a right to believe it was so intended and [p]laintiff reasonably relied on the conduct to his injury."

Following entry of judgments dismissing Regents and the county, plaintiff timely appealed.

## DISCUSSION

We independently review a trial court's order sustaining a demurrer to determine whether the operative complaint states facts sufficient to constitute a cause of action. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) In doing so, we accept as true all material facts properly pled in the operative complaint, but not contentions, deductions, or conclusions of fact or law. (*Winn v.*

6

*Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We also accept as true all materials properly subject to judicial notice, and disregard allegations in the complaint inconsistent with the judicially noticed facts. (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 191.) "[I]t is an abuse of the trial court's discretion to sustain a demurrer without leave to amend if there is a reasonable possibility the plaintiff can amend the complaint to allege any cause of action." (*Jensen v. Home Depot, Inc.* (2018) 24 Cal.App.5th 92, 97.)

## I.  The County's Demurrer

California's Government Claims Act (§ 810 et seq.) (the Claims Act) waives state sovereign immunity and permits plaintiffs to sue "public entities and their employees" for "all noncontractual bases of compensable damage or injury that might be actionable between private persons." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980; *Leon v. County of Riverside* (2021) 64 Cal.App.5th 837, 846; Gov. Code, § 815, subd. (a).) Before filing a suit, a plaintiff alleging an "injury to person or to personal property," must present a written claim to the public entity "not later than six months after the accrual of the cause of action" (§ 911.2, subd. (a)), or, if a plaintiff fails to do so, he may apply to the public entity "for leave to present that claim" "within a reasonable time not to exceed one year after the accrual of the cause of action" (§ 911.4, subds. (a) & (b)). A plaintiff's failure to comply with the Claims Act's requirements bars any lawsuit against the public entity or public employee, and thus provides a ground for sustaining a demurrer. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239.)

7

Plaintiff acknowledges that he failed to timely file a claim with the county or seek leave to do so within the Claims Act's time limits. He argues, however, that the trial court erred in sustaining the county's demurrer because he alleged sufficient facts to establish that the county was estopped from asserting the Claims Act as a defense. We disagree.

"[E]quitable estoppel bars a public entity from asserting noncompliance with the Government Claims Act where the conduct of its agents or employees prevented or deterred the claimant from complying with the requirements of the statute." (*Estill v. County of Shasta* (2018) 25 Cal.App.5th 702, 711 (*Estill*).) A plaintiff asserting equitable estoppel must specifically plead the facts establishing estoppel (*Sofranek v. County of Merced* (2007) 146 Cal.App.4th 1238, 1250-1251 (*Sofranek*); *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 641 (*Mills*)), which include that the defendant (1) was apprised of the facts; (2) intended its conduct to be acted upon, or acted so that the plaintiff had a right to believe it was so intended; (3) the plaintiff was ignorant of the true state of facts; and (4) the plaintiff relied upon the conduct to his injury. (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 656*; Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305; *Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1064 (*Castaneda*).)

In the operative complaint, plaintiff alleged that the county omitted "LA County" from the hospital's name (Olive View UCLA Medical Center) in various "publicly facing statements," which "creat[ed] the false impression that the facility is owned and operated solely by [Regents]." He further alleged that the county did so "purposefully" to "conceal[ ] its ownership and

participation in the operation of [the hospital]" and that he relied on the county's representations to his detriment. He contends these allegations were sufficient to plead an affirmative act upon which he reasonably relied.

In support of his position, plaintiff relies principally on *Elmore v. Oak Valley Hospital Dist.* (1988) 204 Cal.App.3d 716 (*Elmore*). There the plaintiff sued a public agency hospital without first filing the requisite government claim. (*Id.* at p. 720.) The hospital demurred on that ground, and the plaintiff asserted equitable estoppel on the basis that the hospital operated under a different name than the name it had provided to the Secretary of State for use in the Roster of Public Agencies. (*Id.* at pp. 719-720, 723-724 [hospital identified itself as "Oak Valley Hospital District" instead of "Oak Valley District Hospital"].) As a result, even though plaintiff's counsel contacted the Secretary of State to determine whether the hospital was a public agency, the response was that "no such entity was [listed]" in the "Roster of Public Agencies," leading the plaintiff to forgo filing a government claim. (*Id.* at pp. 720, 723.) On appeal, the court held that the facts pled by plaintiff were sufficient to constitute an estoppel.

This case is unlike *Elmore.* Here plaintiff does not allege that the hospital affirmatively acted in a way that prevented him from learning that the county operated the facility. Nor does he allege that he or his attorney exercised any due diligence by checking whether the hospital was a public agency. (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 936 (*Bernson*) ["[t]he rule of equitable estoppel includes, of course, the requirement that the plaintiff exercise reasonable diligence"]; *Castaneda, supra,* 212 Cal.App.5th at pp. 1066-1067 [estoppel

9

particularly disfavored where party asserting it is represented by an attorney].)[5] Plaintiff merely alleges that the hospital omitted reference to the county in its name. That is well short of the sort of calculated conduct that could give rise to estoppel. (*Castaneda*, at pp. 1065-1066 [" ' " '[m]ere silence will not create estoppel unless the silent party was under some obligation to speak, and a party invoking such estoppel must show that it was the duty of the other to speak . . . ' " ' "].)

In an apparent effort to establish that the hospital's name was a purposeful attempt to conceal its relationship with the county, plaintiff points out that Welfare and Institutions Code sections 14166.1, subdivision (d)(8), and 14184.10, subdivision (f)(1)(g)(ii), designate the hospital both as public and as part of the LA County Health Systems Hospitals. But the fact that the hospital's affiliation with the county is plainly referenced in a public law does not demonstrate concealment. Rather it underscores plaintiff's lack of diligence in determining whether the hospital was a public entity, a fact which is further supported by the trial court's judicial notice of "the fact that [the hospital] is operated by the [c]ounty . . . is a matter of public record not reasonably subject to dispute."[6]

---

[5] Although *Bernson* articulated this rule in the context of assessing equitable estoppel from asserting a statute-of-limitations defense, "the policy considerations with respect to estoppel to assert the statute of limitations are the same as those relating to estoppel to assert the [government] claim statute." (*Fredrichsen v. City of Lakewood* (1971) 6 Cal.3d 353, 357.)

[6] Plaintiff does not appeal the trial court's ruling granting the county's request for judicial notice on this basis.

Finally, plaintiff argues that estoppel is an issue that cannot be resolved on demurrer. Although estoppel is an issue of fact, its resolution is proper on demurrer where, as here, the "undisputed facts establish[ ] that equitable estoppel does not apply." (*Sofranek*, *supra*, 146 Cal.App.4th at p. 1251; *Mills*, *supra*, 108 Cal.App.4th at p. 641; accord *Estill*, *supra*, 25 Cal.App.5th at p. 711.)

Accordingly, we conclude that the trial court did not err in sustaining the county's demurrer. Moreover, because plaintiff makes no showing that he could amend his complaint to adequately allege estoppel, it was not an abuse of discretion for the court to deny further leave to amend.

## II. Regents' Demurrer

"An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) " 'An agency is either actual or ostensible.' " (*Franklin v. Santa Barbara Cottage Hospital* (2022) 82 Cal.App.5th 395, 403, citing Civ. Code, § 2298.) "An agency is actual when the agent is really employed by the principal." (Civ. Code, § 2299.) For an actual agency to exist, " ' "[t]he principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control." ' " (*Franklin*, at p. 403.)

An agency is ostensible when a principal intentionally or negligently causes a third person to believe another individual is acting as its agent, even though the individual is not so employed by the principal. (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 999.) " ' "Liability of the principal for the acts of an ostensible agent rests on the doctrine of 'estoppel,' the essential elements of which are representations made by the

11

principal, justifiable reliance by a third party, and a change of position from such reliance resulting in injury." ' " (*Valentine v. Plum Healthcare Group LLC* (2019) 37 Cal.App.5th 1076, 1087 (*Valentine*).)

Plaintiff argues that he sufficiently pleaded ostensible agency because the TAC contains allegations that he reasonably believed that Regents operated the hospital and further believed that the nurses were Regents' employees. To demonstrate the sufficiency of his pleadings, plaintiff cites *Mejia v. Community Hospital of San Bernardino* (2002) 99 Cal.App.4th 1448 (*Mejia*) a case in which a patient sought to hold a hospital liable for the negligence of a non-employee doctor who provided treatment to a patient at the hospital. *Mejia* held that in those circumstances, the doctrine of ostensible agency is now commonly expressed as having "two elements: (1) conduct by the hospital that would cause a reasonable person to believe that the physician was an agent of the hospital, and (2) reliance on that apparent agency relationship by the plaintiff." (*Id.* at p. 1453.)

Unlike *Mejia* and similar cases, here plaintiff seeks to hold Regents, not the hospital where he was treated, liable for the nurses' negligence. To prevail against Regents on a theory of ostensible liability, plaintiff would have to show that Regents affirmatively created a false impression of agency, upon which plaintiff reasonably relied. (*Valentine, supra*, 37 Cal.App.5th at p. 1087.)

The allegations in the TAC are insufficient. Plaintiff alleges that Regents was affiliated with and offered residency programs at the hospital. Mere affiliation, however, is not enough to create a false impression of agency. (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 772 ["[T]he mere use of a

12

'trade name' is insufficient to 'create' even an 'ostensible' 'agency relationship[ ]' "].)  Nor does it follow that Regents' operation of residency programs at the hospital would create a false impression that Regents had an agency relationship with every employee that worked there.  But even if it did, plaintiff does not allege he was aware of those programs when he was injured, let alone that he relied to his detriment upon them.[7]  Plaintiffs' allegations that "some of the doctors" working at the hospital "told him" that they "were affiliated with UCLA as medical students, interns, or residents" are equally inadequate.  Conduct by actors other than Regents provides no support for plaintiff's theory.  (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 404 ["ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists"].)

Plaintiff also notes, without any discussion, that the TAC alleged that the nurses were "joint employees" of the county and Regents.  Regents argues, and we agree, that plaintiffs' conclusory allegations lack even the cursory detail required to allege an agency relationship between Regents and the nurses. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 ["For purposes of reviewing a demurrer, we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law"].)

---

[7]     Nor could he.  Plaintiff's counsel conceded at argument that plaintiff was not aware of and did not rely on Regents' involvement or affiliation with the hospital in determining where he would receive treatment.

13

Because plaintiff has not proffered any amended language to show how he might allege that the nurses were the agents or ostensible agents of Regents, the trial court did not abuse its discretion in denying leave to amend.[8]

## DISPOSITION

The judgments are affirmed. The respondents may recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HEIDEL, J.*

We concur:

EDMON, P. J.

EGERTON, J.

---

[8] Indeed, plaintiff's counsel asserted at argument that he did not want to further amend the complaint.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.