Filed 1/17/24  Tenser v. County of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ADAM J. TENSER, | B316259 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 20SMCV01690) |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |
| ADAM J. TENSER, | B326976 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 20SMCV01690) |
| BETH SILVERMAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Mark H. Epstein, Judge. Affirmed.

Adam J. Tenser, in pro. per., for Plaintiff and Appellant.

Collins + Collins, Erin R. Dunkerly, Jessica C. Covington and James C. Jardin for Defendant and Respondent and Defendants and Respondents.

* * * * * *

Appellant, Attorney Adam J. Tenser (appellant), sued the County of Los Angeles (county) and six individual employees of the county (county employees) (collectively respondents) for violation of California's unfair competition law (Bus. & Prof. Code, § 17200), defamation, and negligence following various events surrounding the arrest and trial of appellant's client Blake Leibel for the murder of Iana Kasian.[1] In July 2021, the trial court sustained without leave to amend the county's demurrer to appellant's first amended complaint on the ground that appellant failed to present a timely claim pursuant to the Government

---

[1] The county employee respondents are Robert Joshua Ryan, Beth Silverman, Tannaz Mokayef, Robert Martindale, Maurice Jollif, and Elizabeth Dumais Miller. Silverman and Mokayef were sued individually and in their capacities as deputy district attorneys for the Los Angeles County District Attorney's Office. Martindale and Jollif were sued individually and in their capacities as employees of the Los Angeles County Sheriff's Department (LASD). Miller was sued individually and in her capacity as county counsel. Ryan was a prosecution witness in the trial of Blake Leibel.

Claims Act (Gov. Code, § 810 et seq.).[2] The county was dismissed from the lawsuit. In July 2022, the trial court sustained without leave to amend the county employees' demurrer on the same ground. A judgment of dismissal was subsequently entered. Tenser separately appealed from the two dismissals. We consider both appeals in this opinion. Because appellant failed to file a timely government claim, we affirm the judgment in full.

## FACTUAL BACKGROUND

The complaint alleges the following facts: Appellant is an entertainment lawyer who represents Blake Leibel. On May 26, 2016, Leibel was arrested for the murder of Kasian. Appellant met with Leibel the following day at the county's Twin Towers Correctional Facility, where Leibel asked appellant to find him criminal counsel. Appellant did so and attempted to visit Leibel with criminal counsel on June 7, 2016. However, they were denied attorney-client visitation. Appellant attended a criminal hearing in late July 2016 with a criminal attorney and attempted to substitute in as counsel but was denied.

Appellant was denied attorney-client visits with Leibel beginning in August 2016. He sought relief through respondent Jollif, the supervisor of the Twin Towers legal intake unit, but Jollif denied appellant's request because appellant was not Leibel's attorney of record and did not have a court order authorizing visitation. Leibel signed a notarized agreement evidencing appellant's representation, but appellant was still denied a confidential attorney-client visitation. In late August

---

[2] All further statutory references are to the Government Code unless otherwise noted.

3

2016, appellant contacted respondent Miller of the county counsel office, but Miller also denied appellant's request to visit Leibel absent a court order. Appellant was unable to provide criminal counsel for Leibel, who was forced to use a public defender. Appellant asserts that he was denied access to confidential attorney-client communications with Leibel from August 1, 2016, through June 28, 2018, the date of Leibel's sentencing.

Leibel's trial began in early June 2018 and appellant attended, sitting in the gallery. Leibel requested appellant attend the trial and inform him of the civil consequences. Prosecutors Mokayef and Silverman drew attention to appellant's presence. The attention was enough that one juror apparently asked about appellant during voir dire.

On June 13, 2018, trial was adjourned for the lunch break, and due to issues with the elevator, the hallway outside the courtroom became packed with members of the press, jurors, witnesses, and counsel. Silverman, Mokayef, and Martindale were engaged in a boisterous conversation between themselves and witnesses, including the victim's mother and Martindale's partner, detective William Cotter. The group was sharing their opinions of the morning's testimony and its effect on the case, and celebrating their apparent progress towards conviction of Leibel. The discussion was taking place within audible distance to the members of the press and the jury. Appellant stood equal distance from the group as the nearest juror, to ascertain what the jurors were hearing.

Detective Cotter turned to appellant, and appellant said, "Your conduct is highly inappropriate in front of the jury." Detective Cotter replied, "Mr. Tenser I'm not interested in your opinion." Silverman then lashed out yelling, "This is none of your

4

business." Appellant replied, "It is my business. I'm an officer of this court and your opinion does not matter." Silverman and Mokayef then called appellant a "stalker" in the presence of the jury, witnesses and the press. Mokayef later told the judge that appellant was "basically stalking" prosecutors, while Silverman added that appellant should know better as an attorney and either should act professionally or be ordered out of the building.

Mokayef later solicited a libelous e-mail from Ryan, alleging that appellant had accosted Ryan in the parking lot of the courthouse. On June 14, 2018, after the lunch break, the same juror that had inquired about appellant during voir dire expressed fear of appellant and was excused from jury duty.

On June 18, 2018, the court cited appellant for contempt for following a juror in his car, which appellant denied, and ordered him to leave the courthouse for the remainder of the trial.

On June 20, 2018, Martindale executed a declaration that appellant claims mischaracterized the events described therein. The declaration described Martindale witnessing repeated ethical and professional lapses in appellant's behavior during the trial.

## PROCEDURAL HISTORY

**Appellant's attempted claims and complaint**

Appellant filed an action against the county employees in the United States District Court on June 24, 2019.[3]

Appellant asserts he first filed a government claim notice when he mailed his federal complaint to the State of California's Department of Justice and Department of General Services on

---

[3] Appellant's federal civil rights claims against respondents in the district court were dismissed and the federal court declined to exercise jurisdiction over the California causes of action.

5

June 27, 2019.[4]  On November 2, 2019, Tenser served the federal complaint on the Los Angeles County Clerk.  On December 4, 2019, the county mailed appellant a letter stating that the claim was received on November 14, 2019, and that "[t]he Los Angeles County Registrar-Recorder/County Clerk is not the proper venue for presenting a Claim."  On January 31, 2020, appellant served the federal complaint on the county's Board of Supervisors.

Appellant filed this action on November 6, 2020.  The first amended complaint was filed on February 24, 2021.  It included causes of action against the county employees for violation of the unfair competition law, defamation, and negligence, and a cause of action against the county for negligence in the form of vicarious liability.

**The county's demurrer**

On March 29, 2021, the county filed a demurrer pursuant to Code of Civil Procedure section 430.10, subdivision (e) on the ground that appellant failed to state a claim against it.  The county argued, among other things, that appellant did not allege that he presented a government claim to the county within the time frame required by section 911.2, nor did he meet any of the requirements of that statute.[5]

Appellant submitted an opposition in which he argued that he substantially complied with the requirements of the

---

[4]     The trial court found, and appellant appears to accept, that "[o]ne does not give the County notice of something by serving the State."

[5]     The county's alternative arguments were prosecutorial immunity based on section 821.6, discretionary acts immunity under section 820.2, and the litigation privilege under Civil Code section 47.

Government Claims Act and the county had waived the defense of appellant's noncompliance due to its failure to give appellant notice of any deficiency. Appellant asserted his service of a federal complaint based on the same fundamental facts as the present lawsuit constituted substantial compliance. Appellant asserted the county received the claim on November 2, 2019, and returned it with a notice of improper venue. Appellant further asserted he sent another claim on January 31, 2020. Appellant argued that the county failed to provide any notice of deficiency. Appellant submitted argument opposing the county's other defenses. The county submitted a reply brief arguing, among other things, that the county had no duty to notify appellant that his claim was rejected because appellant did not file it on time.

On July 16, 2021, the trial court issued an order sustaining the county's demurrer on the ground that appellant failed to present a timely government claim. The trial court did not reach the other issues raised by the county in its demurrer. The county was dismissed from the lawsuit. On October 12, 2021, appellant filed a notice of appeal from the July 16, 2021 order.[6]

---

[6] The July 16, 2021 order sustaining the demurrer is not an appealable order. Generally, an order sustaining a demurrer "is neither appealable per se nor as a final judgment." (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 920.) The parties have not drawn our attention to a judgment of dismissal as to the county following the July 16, 2021 order. Although the trial court noted in a later order that the county had been dismissed from the lawsuit, no judgment of dismissal appears in the record on appeal. However, we may "deem an order sustaining a demurrer to incorporate a judgment of dismissal." (*Ibid.*) In the absence of a formal judgment of dismissal as to the

7

**The county employees' demurrer**

On March 21, 2022, appellant sought leave to file a third amended complaint as to the county employee respondents.[7]  The proposed third amended complaint included as a fourth cause of action appellant's claim of negligence against the county.  As to the fourth cause of action against the county, appellant asked the court "GRANT the Motion for Leave to Amend the Second Amended Complaint as to the defaulting defendants and LODGE the [Third Amended Complaint] pending a ruling on the appeal as to the [county]."

On June 22, 2022, the county, along with the county employee respondents, demurred to the third amended complaint.  Respondents argued that appellant's failure to timely file a government claim against respondents barred his lawsuit entirely.  Respondents argued that under the Government Claims Act, no person may sue a public entity or public employee unless a government claim has been timely filed.  Appellant's third amended complaint did not contain allegations showing compliance with this requirement.  Respondents also reiterated the privilege and immunity arguments previously advanced on behalf of the county.

Appellant opposed the motion, making substantially similar arguments to those he made in opposition to the county's

County, we deem the order sustaining the county's demurrer to incorporate a judgment of dismissal.

[7]     Appellant characterized these individuals as the "defaulting defendants."  While the county employee respondents had previously been subject to entry of default, respondents' motion to set aside entry of default was granted as a clerical error on July 18, 2022.

previous demurrer.  On July 22, 2022, the trial court sustained the demurrer without leave to amend as to the county employees, specifically noting that its order did not involve the county as "the County has been dismissed and the Court[']s orders in that regard are on appeal."  The court sustained the county employee respondents' demurrer based on appellant's failure to file a timely government claim.  The court declined to address any other grounds raised by the county employee respondents.

Judgment was entered on December 12, 2022.  Appellant filed his notice of appeal from the judgment on January 25, 2023.

## DISCUSSION

### I.  Standard of review

"The function of a demurrer is to test the sufficiency of the complaint as a matter of law, and it raises only a question of law."  (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420.)  Therefore, we apply a de novo standard of review.  (*Ibid.*)  A demurrer is appropriate where the complaint on its face does not state facts sufficient to constitute a cause of action or discloses that the court has no jurisdiction.  (*Ibid.*)  "On demurrer review, we accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law."  (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346.)

Denial of leave to amend is reviewed for an abuse of discretion.  (*Eghtesad v. State Farm General Ins. Co.* (2020) 51 Cal.App.5th 406, 411.)  Denial of leave to amend is appropriate "'only when it conclusively appears that there is no possibility of alleging facts under which recovery can be obtained.'"  (*Id.* at p. 412.)

9

## II.     The Government Claims Act

"'[S]ubmission of a claim to a public entity pursuant to section 900 et seq. "is a condition precedent to a tort action and the failure to present the claim bars the action."'" (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1240 (*State of California*).)  "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a complaint to a general demurrer for failure to state a cause of action." (*Id.* at pp. 1240-1241.)

A claim for personal injury against a public entity generally must be presented to the public entity "not later than six months after the accrual of the cause of action." (§ 911.2, subd. (a).) "'Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants.'" (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 906.) Thus, accrual occurs at "'the time when the cause of action is complete with all of its elements.'" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806.)  Because such accrual generally occurs at the time of the alleged wrongful act, a plaintiff must generally file a claim not later than six months after the incident in order to survive demurrer on a claim against a public entity. (*Estill v. County of Shasta* (2018) 25 Cal.App.5th 702, 712 (*Estill*) ["Estill cannot maintain a cause of action against defendants because she failed to present the County with a prelawsuit claim no later than six months after the accrual of her causes of action . . . ."].)

A claimant who fails to submit a claim within six months of the occurrence may apply for permission to file a late claim. (§ 911.4, subd. (a).)  The application to file a late claim "shall be

10

presented to the public entity . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim." (§ 911.4, subd. (b).) When an application to file a late claim is not filed within one year after the cause of action accrued, the trial court "lack[s] jurisdiction to relieve [the party] of the . . . requirement for presenting a timely claim." (*Simms v. Bear Valley Community Healthcare Dist.* (2022) 80 Cal.App.5th 391, 406 (*Simms*); see *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779.)

## III.   The demurrers were properly sustained

The trial court sustained first the county's, and then the county employees', demurrers on the ground that appellant failed to file a timely claim. The trial court did not err in making these rulings.

Appellant asserts that his causes of action accrued in June and July of 2018. Appellant further asserts that he substantially complied with the Government Claims Act by "mailing a letter claim-notice with the federal complaint to the Clerk of the County in accordance with [§ 915, subd. (a)(2)] on November 2, 2019."

Appellant's purported substantial compliance on November 2, 2019, is more than a year after appellant's claims accrued in June and July 2018. Because appellant has failed to "allege facts demonstrating or excusing compliance with the [government claim] requirement," his complaint is properly subject to a general demurrer for failure to state a cause of action. (*State of California, supra*, 32 Cal.4th at p. 1243.)

Even if appellant's November 2, 2019 mailing to the clerk of the County could be considered an application for permission

11

to file a late claim, it was not presented within the one-year time limit set forth in section 911.4. The trial court therefore lacked jurisdiction to relieve appellant of the requirement of filing a timely claim. (*Simms, supra*, 80 Cal.App.5th at p. 406.) Under the circumstances, appellant cannot maintain his causes of action against either the county or its employees, and their respective demurrers were properly sustained.

## IV. County's failure to give notice of rejection of claim

Appellant argues that because the county failed to give him written notice that his claim had been rejected, he had until two years from the date his cause of action accrued to sue the county. Appellant's argument is based on a faulty premise, and the statutes upon which he relies are only relevant if the individual has filed a timely claim.

Section 913 applies if a plaintiff files a timely claim. It requires that notice be given to the claimant regarding whether the claim has been rejected, among other things. (§ 913, subds. (a), (b).)

If written notice is given in accordance with section 913, the claimant is required to bring suit "not later than six months after the date such notice is personally delivered or deposited in the mail." (§ 945.6, subd. (a)(1).) However, if the public entity fails to give notice in accordance with section 913, the claimant must bring an action "within two years from the accrual of the cause of action." (§ 945.6, subd. (a)(2).) Thus, assuming a timely claim has been filed, "[i]f the public entity does not give written notice that the claim has been rejected (§ 913), the plaintiff has until two years from the date her cause of action accrued to sue the entity." (*S.M. v. Los Angeles Unified School Dist.* (2010) 184 Cal.App.4th 712, 717 (*S.M.*).)

12

Nothing in the statutory scheme requires the public entity to respond to an untimely claim. Appellant did not file a timely claim, nor did he file a timely application for relief, therefore he was not entitled to notice under section 913. As such, the time limits present in section 945.6 are inapplicable to appellant.

The cases that appellant cites do not suggest otherwise. *Mandjik v. Eden Township Hospital Dist.* (1992) 4 Cal.App.4th 1488, 1504, involved a plaintiff whose injury accrued in approximately February or March 1988. The plaintiff filed a timely application for relief from the claim presentation requirement, which was granted in part. (*Id.* at p. 1495.) Relief was granted on April 18, 1989, and the public entity failed to give written notice of rejection. (*Id.* at p. 1499.) Plaintiffs filed their complaint on January 10, 1990. (*Ibid.*) Under those circumstances, the *Mandjik* court concluded that the plaintiff's complaint was not barred because "[w]here the public entity fails to give written notice of rejection in accordance with section 913, the statute of limitations is 'within two years from the accrual of the cause of action.'" (*Id.* at p. 1499.) As appellant failed to present a timely application for relief from the claim presentation requirement, the *Mandjik* case is irrelevant.

In *S.M*, the minor plaintiff waited nearly two years to submit a government claim based on allegations of sexual abuse. The school district denied the claim and obtained summary judgment based on failure to comply with the claim presentation requirement. (*S.M., supra*, 184 Cal.App.4th at pp. 715-716.) In *Martinez v. County of Los Angeles* (1978) 78 Cal.App.3d 242, the plaintiff submitted to surgery at a county hospital, discovered that the county employees had committed malpractice roughly five months later, and submitted a claim three months later. The

county's demurrer was sustained without leave to amend, but this court reversed, finding that submission of a claim within three months of discovery of the malpractice was timely. (*Id.* at pp. 245-246.) Neither case suggests that the county was required in this matter to respond to appellant's untimely claim.

Both *Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699 and *Roger v. County of Riverside* (2020) 44 Cal.App.5th 510 involved claims that were filed more than six months, but less than one year, after accrual of the claims. In *Phillips*, the plaintiff's defective claim triggered the notice and defense-waiver provisions of the Government Claims Act. (*Phillips, supra*, at pp. 707-708.) The case did not address a situation where, as here, a defective claim is filed after the time has run for the plaintiff to file an application for leave to file a late claim. In *Roger*, the public agency notified the plaintiff in summary fashion that it had rejected his claim, but failed to notify him of the specific defects in his claim. The *Roger* court agreed that the public entity waived its ability to assert a late-claim defense because it had failed to notify him of this defect as required by the act. (*Roger, supra*, at p. 523.) While these cases address the application of the notice and defense-waiver provisions of the Government Claims Act, neither suggests that these provisions are applicable when the claimant fails to file any claim—whether defective or not—within one year of the accrual of his causes of action.

*Estill, supra*, 25 Cal.App.5th 702 is instructive. The plaintiff's claim accrued in 2009, but she did not file a government claim until February 2012. In her claim, she stated that the date of the incident was September 2009, but represented that she did not become aware of her claim until

14

September 2011.  However, during discovery, the county learned that the claimant had actually become aware of her claim in 2009.  (*Id.* at p. 707.)  The county then moved for summary judgment, which was granted and affirmed on appeal.  The Court of Appeal rejected the plaintiff's argument that the county's failure to notify her that her claim was untimely resulted in waiver pursuant to section 911.3.  The *Estill* court reasoned: "even if the County had given Estill the section 911.3, subdivision (a) warning, Estill could not have obtained relief from the claim presentation requirements because a late-claim application must be presented no more than one year after the accrual of the cause of action and Estill submitted her claim to the County more than one year after her causes of action accrued."  (*Estill*, at p. 712.)

Similarly, here, even if notified that his defective claim was untimely, appellant could not have obtained relief from the claim presentation requirements because his defective notice was not provided to the county until more than a year after his claim accrued.  Under the circumstances, the county was not required to provide notice of the late-claim relief procedures.[8]

## V.     **Substantial compliance/prejudice**

Appellant argues that his late-filed letter with the federal complaint attached constituted substantial compliance with the Government Claims Act.  Appellant cites *Minsky v. City of Los*

---

[8]     We reject appellant's suggestion that respondents should be equitably estopped from asserting any deficiency regarding the timing of appellant's claim notice due to the county's failure to inform appellant of the deficiencies of the claim.  Appellant cites no authority that this equitable doctrine applies in the context of a party's failure to file a timely claim under the Government Claim Act.

*Angeles* (1974) 11 Cal.3d 113, 123 (*Minsky*) for the proposition that, "[s]o long as the policies of the claims statutes are effectuated, they should be given a liberal construction to permit full adjudication on the merits."[9] Appellant relies on *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 (*San Jose*), in asking that we pose the question: "Is there sufficient information disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit?" (*Id.* at p. 456.)

The *San Jose* court considered whether class certification was appropriate in an action concerning alleged damages from airport noise, vapor, dust and vibration. (*San Jose, supra*, 12 Cal.3d at p. 453.) In determining that class certification was not appropriate, the *San Jose* court considered the parties' competing arguments regarding the representative plaintiffs' compliance with the Government Claims Act. There was no issue as to timeliness, and the court ultimately concluded it need not decide whether the claim at issue was sufficient. (*Id.* at p. 458.) The case does not provide authority for appellant's position that his untimely and defective claim constituted substantial compliance.

*Malear v. State of California* (2023) 89 Cal.App.5th 213 is also unhelpful to appellant. In *Malear*, the injury commenced on May 28, 2020. (*Id.* at p. 218.) The plaintiff presented his claim to the state on July 15, 2020, less than two months after the injury. (*Id.* at p. 219.) However, the plaintiff filed his original complaint prior to the state's rejection of his claim. He later filed a first

---

[9] The *Minsky* court held that the Government Claims Act did not apply to the claims at issue in that matter, therefore the case is unhelpful to appellant. (*Minsky, supra*, 11 Cal.3d at p. 117.)

16

amended complaint as of right, containing new allegations that he had complied with the claim presentation requirements. (*Ibid.*)  Under those circumstances, the plaintiff was determined to have substantially complied with the claim presentation requirement of the Government Claims Act.  (*Malear*, at p. 221.) While the *Malear* court found that "the substantial compliance doctrine remains viable," it limited its holding to "the limited circumstances presented in this case."  (*Id.* at p. 223.)  The *Malear* court did not suggest that a claim filed outside the statutory period meets the doctrine of substantial compliance.

Appellant further argues that the county cannot show prejudice arising from his failure to file a timely claim.  Appellant cites *Elias v. San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74, for the proposition that "[i]f the claim satisfies the purpose of the act without prejudice to the government, substantial compliance will be found."  The claim at issue in *Elias* was filed "[w]ithin the statutory period."  (*Id.* at p. 72.)  The issue of substantial compliance involved whether the claim was addressed to the proper entity.  Appellant has failed to provide authority suggesting that a purported claim filed outside of the statutory period does not cause prejudice to the public entity.

Contrary to appellant's argument, caselaw interpreting the claims requirements suggests that the time limits set forth in the act are built in to prevent prejudice to the public entity and to the public in general.  "'Requiring a [claimant] . . . to first present a claim to the entity . . . affords the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to others.  [Citations.]  [It] also permits the public entity to investigate while tangible

evidence is still available, memories are fresh, and witnesses can be located. [Citations.] Fresh notice of a claim permits early assessment by the public entity, allows its governing board to settle meritorious disputes without incurring the added cost of litigation, and gives it time to engage in appropriate budgetary planning.'" (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 991, fn. 8.) Thus, we reject appellant's argument that his late-filed, deficient claim did not cause prejudice to the county.

Appellant has failed to convince this court that his purported claim, filed over a year after his causes of action accrued, substantially complies with the Government Claims Act.[10]

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs of appeal.

CHAVEZ, J.

We concur:

ASHMANN-GERST, Acting P. J.          HOFFSTADT, J.

---

[10] Because we affirm the judgment on the ground that appellant failed to file a timely claim, we decline to address the parties' arguments regarding prosecutorial immunity and litigation privilege. We also decline to address the trial court's ruling on the county's special motion to strike pursuant to Code of Civil Procedure section 425.16.